IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-20068-01-CM |
| | ) |
| VERNON KEITH REED, et al., | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

This criminal case comes before the undersigned U.S. Magistrate Judge, James P. O'Hara, on the motion of non-party, Boilermakers National Funds ("BNF"), to quash two requests in a subpoena duces tecum served upon it by defendant Vernon Keith Reed ("Reed") (**doc. 43**). Reed has filed a response (doc. 48), a portion of which has been partially sealed ex parte (doc. 49). BNF has not filed a reply. The court is now ready to rule.

On May 26, 2006, the grand jury returned an indictment against Reed and co-defendant, Richard Michael Taylor ("Taylor"), alleging conspiracy and theft or embezzlement regarding funds belonging to certain union ERISA pension and healthcare plans (doc. 1). As articulated by Reed, this prosecution arises out of some remodeling projects for the BNF offices that the government alleges Reed, as a BNF employee, improperly steered to Taylor and his construction companies, and for which BNF paid more than the value of the services it received. On December 18, 2007, Reed filed an ex parte motion under seal requesting that the court issue a subpoena duces tecum requiring BNF to

produce certain documents. The motion was granted by the presiding U.S. District Judge, Hon. Carlos Murguia.[1] The subpoena requests production of fifteen categories of documents. BNF objects to only two of the categories, Request Nos. 2 & 5, which are now at issue in this motion. BNF argues that both of these requests are unreasonable and oppressive under Fed. R. Crim. P. 17(c)(2), and fail to meet the criteria of relevancy, need and admissibility established in *United States v. Nixon*.[2] BNF also argues that certain of the documents sought in Request No. 5 are protected by the attorney-client privilege.

Fed. R. Crim. P. 17(c)(2) provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."[3] To determine if the burden of production rises to the level of being unreasonable or oppressive, courts examine whether the party moving for the subpoena has made the necessary showing:

> (1) that the documents are evidentiary and relevant [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'[4]

The Supreme Court in *Nixon* summarized the moving party's burden as clearing the

---

[1] *See* doc. 40.

[2] 418 U.S. 683, 699-702 (1974).

[3] *See id.* at 698.

[4] *Id.* at 699-700 (footnote omitted).

three hurdles of relevancy, admissibility, and specificity.[5] To meet the specificity requirement, a subpoena "must refer to specific documents or, at least, to specific kinds of documents."[6] "It is not enough that the documents have some *potential* of relevance and evidentiary use."[7] "There must be a 'sufficient likelihood' that the requested material is 'relevant to the offenses charged in the indictment,' and a 'sufficient preliminary showing that . . . [the requested material] contains evidence admissible with respect to the offense charged.'"[8]

Request No. 2 seeks the personnel files of Scott Wagner, a former BNF compliance officer, and David Hanson, the chief financial officer, who allegedly signed every BNF check at issue. The court first finds that Reed has failed to meet the specificity requirement with regard to this request in that he seeks the *entire* personnel files of Mr. Wagner and Mr. Hanson. Typically, personnel files contain a variety of documents and information which would clearly have no relevancy to any of the offenses charged in this case. Further, while Reed in his sealed response has indicated the type of information he is seeking from these files, the court finds it highly unlikely that the requested personnel files contain such

---

[5] 418 U.S. at 699.

[6] *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994).

[7] *Id*. at 667 (citing *United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991) (emphasis in original)).

[8] *United States v. Wittig*, 247 F.R.D. 661, 663 (D. Kan. 2008) (citing *Anderson*, 31 F. Supp. 2d at 944 (quoting *Nixon*, 418 U.S. at 700)).

O:\CRIMINAL\ORDERS\06-20068-01-CM-43.wpd                -3-

information. Rule 17(c) is "not intended to provide an additional means of discovery,"[9] but "offers compulsory process for specific, identifiable evidence for trial."[10] The court, therefore, finds that this request is not specific and that Reed has failed to establish the relevance of the requested files. Reed has also failed to make a sufficient preliminary showing that these files contain evidence admissible with respect to the offenses charged. The court quashes the subpoena as to Request No. 2.

Request No. 5 seeks information regarding employers who were delinquent in submitting contributions to the pension fund between January 1, 1998, and January 1, 2003. More specifically, the request seeks: (A) monthly reports on employers who were delinquent; (B) documents sent to the BNF's outside counsel, the Blake & Uhlig law firm, for their work in pursuing collections; and (C) delinquent and collection reports to the trustees.

As to subpart (A), Pam Dumler, the official records custodian of BNF, states in her affidavit[11] that BNF maintains no monthly reports on employers who are delinquent in submitting contributions to the Pension Fund; therefore, BNF has no documents to produce with respect to this request. However, Ms. Dumler's affidavit, as well as BNF's motion, is silent as to the requests for reports to the trustees sought in subpart (C). In his response, Reed argues that while BNF may not denominate the periodic reports as "monthly delinquent

---

[9] *Nixon*, 418 U.S. at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

[10] *Wittig*, 247 F.R.D. at 663 (quoting *Jackson*, 155 F.R.D. at 667).

[11] *See* doc. 43-3.

reports," some sort of documents must exist. Reed argues that BNF produced board minutes to the government that reference various reports and exhibits, including reports on employer delinquencies but failed to attach the referenced reports. Reed also argues that in response to Request No. 15 of the subpoena, BNF has produced brochures to him which included agendas referencing various reports, but did not include the reports.

The court cannot require a party to produce information or records that the party does not possess. However, it appears as though BNF possesses reports of some kind on employer delinquencies. The court finds that BNF has not proven that production of such reports for the requested time period, January 1, 1998 to January 1, 2003, would be unreasonable or oppressive. The court also finds that Reed has established the relevance of the reports and has made a sufficient preliminary showing that these reports contain evidence admissible with respect to the offenses charged. The court denies the request to quash the subpoena as to Request No. 5(A) and (C). BNF shall produce the responsive documents to Reed by **November 10, 2008**.

As to subpart (B), Reed seeks the documents sent to the Blake & Uhlig law firm for their work in pursuing collections of the delinquent accounts from January 1, 1998 to January 1, 2003. BNF argues that this request is unreasonable and oppressive and the burden of compliance outweighs the potential relevance of the records sought. In support, Ms. Dumler states that identifying the documents responsive to this request would require a manual review of hundreds of files, some of which may be stored off-site or at various locations at

BNF headquarters in other locations. Ms. Dumler estimates that for one year alone, the records number in the several thousands of pages. Ms. Dumler estimates that a search and retrieval of the records potentially or actually subject to this request will require approximately two to three months of time including consultation with counsel for BNF.

BNF also argues that the request seeks attorney-client communications. In support, BNF has provided the affidavit of Curtis Barnhill,[12] who was a partner in the law firm Blake & Uhlig and represented BNF in various matters during the relevant time period. Mr. Barnhill states that records sought by Reed include records transmitted in confidence by BNF to its counsel at counsel's request to facilitate the rendition of legal advice to BNF. Mr. Barnhill states that the records also include communications which he and other counsel wrote in confidence to BNF as its counsel. Mr. Barnhill estimates that it will require several weeks of collective work by counsel for BNF and one or more of its representatives to review BNF's records in order to determine which records may be disclosed, and that a privilege log will have to be prepared as to the documents which BNF withholds as subject to the attorney-client privilege.

First, the court notes that Reed argues in his response that he is not seeking attorney-client privileged documents, but only those documents that will help him prepare his defense and avoid delay at trial. However, given the substantial amount of time and number of documents that BNF would be required to review in order to respond to this request, the court

---

[12] Doc. 43-4.

finds the request is unreasonable and oppressive. Reed has failed to establish that the relevancy of these records outweighs the burden which would be imposed on the BNF. The court also finds that Reed has neither established the need for these records nor has he made a sufficient preliminary showing that the requested documents contain evidence admissible with respect to the offenses charged in this case. The court, therefore, quashes the subpoena as to Request No. 5(B).

In consideration of the foregoing,

IT IS HEREBY ORDERED that BNF's motion to quash the subpoena duces tecum (**doc. 43**) is granted in part and denied in part.

Dated this 24th day of October, 2008, at Kansas City, Kansas.

s/James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge